IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUHAMED NAYEF AL ABDO AL HALUF,<br><br>    Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:12-CV-2863-CMK<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 20) and defendant's cross-motion for summary judgment (Doc. 22).

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on April 30, 2010. In the application, plaintiff claims that disability began on April 30, 2010. Plaintiff claims that disability is caused by a combination of back pain, leg pain, left knee pain, and left ankle pain. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on March 23, 2011, before Administrative Law Judge ("ALJ") Carol L. Buck. In an April 21, 2011, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): residual effects status post acute poliomyelitis (polio) which include mild-moderate back pain with mild left knee degenerative joint disease;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant has the residual functional capacity to perform sedentary work; he is able to lift-carry 10 pounds occasionally and 5 pounds frequently; he is able to stand/walk for two hours in an eight-hour day; he is able to sit for six hours in an eight-hour day; he is able to stoop occasionally; he is restricted from climbing, balancing, and exposure to heights; he requires the use of a cane when ambulating all distances and over all terrains;

4. The claimant is capable of performing his past relevant work as an office clerk; and

5. Alternatively, considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are other jobs that claimant can perform that exist in significant numbers in the national economy.

After the Appeals Council declined review on November 13, 2012, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /

2

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues that the ALJ erred by: (1) ignoring treating physician opinion; (2) failing to establish that plaintiff's past relevant work in office jobs was substantial or gainful; (3) failing to carry the burden at step five of establishing that jobs exist in sufficient numbers; (4) not reviewing plaintiff's impairments under Listing 11.11; and (5) failing to properly assess credibility.

### A.   Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

In his motion for summary judgment, plaintiff argues that "[t]reating physician opinion cannot be totally ignored as happened here," but plaintiff does not identify any such opinions. Plaintiff references in his brief pages 217-18, 240, and 267-68 of the certified administrative record. These pages consist of portions of records from Northern California Orthopedic Centers and Manzanita Medical Center. The ALJ addressed the records from Northern California Orthopedic Centers as follows:

> The medical evidence is somewhat sparse. Following his arrival to the U.S. in 2009, Dr. Polskivy of Northern California Orthopedic Centers noted ankle bursitis on the left with some mild left knee degenerative joint disease. A radiograph of the lumbar spine in December 2009 was normal. The claimant has not had any operative intervention and orthopedic examination has only been occasional with only some therapy prescribed. The claimant continued to decline a recommended orthotic (Ex. 1F).

The ALJ did not discuss any opinions rendered by treating sources at Northern California Orthopedic Centers regarding plaintiff's functional capabilities for the simple reason that no such opinions exist. Likewise, as to the referenced documents from Manzanita Medical Center, none reflects any medical opinions regarding plaintiff's functional capabilities.

### B. Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Regarding plaintiff's credibility, the ALJ stated:

> . . .[T]he claimant testified that he was born in Syria and completed high school there in 1985. He noted that he came to the U.S. on December 24, 2009, and that two months after his arrival, he was referred to Manzanita Medical Clinic. He reported that he came to the U.S. as a refugee and has not worked since 2004, stopping due to health problems with pain in his legs. He noted that he speaks only a little simple English and speaks Arabic and Russian. He stated that he cannot work now because after 2004 the pain in his legs was getting worse. He reported that he cannot even stand on his legs at times when getting up and that he has cramps in his left leg at night. He noted that his son will massage his legs, which helps. He stated that he wears slippers as he cannot wear shoes. He reported that he has uncontrollable pain in two places on his legs and cannot feel his feet and toes. He noted that he finds it difficult when

standing and loses balance.  He stated that he feels pressure when standing and can stand for about 10 minutes and walk for 10 minutes slowly.  He reported that he cannot keep up with normal walking people and that he had pain in his legs when sitting.  He noted that the doctor said that there is nothing that can be done to help.  He stated that he spends most of the time lying down and that he even eats lying down.  He reported that he was told not to lift more than six pounds.  He noted that he lives with his son (20) and his daughter (17) and that his wife left.  He stated that he takes medication in the morning that makes him sleepy.  He reported that he does not cook, but eats prepared foods.  He noted that there is no work that he could do for eight hours/day for five days/week.  He stated that he is prescribed Tramadol and Naproxen.  He reported that he tried special shoes that did not work.  He noted that he was told that his nerves are dead.  He stated that he loses his balance because of nerve problems and that sitting is very difficult, causing him to keep changing position.  He reported that he has a driver's license, but does not drive, as he cannot sit due to his shaking legs.

In Ex. 6E, the claimant reported that he has shortness of breath, weakness, and spine problems.  He noted that he seeks to his personal care, cooks, or cleans occasionally, and rests during the day.  He stated that he walks for 10 minutes and then feels leg pain, dizziness, shortness of breath, and pain in his back.  He reported that he does not climb stairs and has restrictions on lifting and carrying.   He noted that he does not grocery shop, drive, do yard work, or clean.  He stated that he sleeps for nine hours and takes rest periods for two-three hours daily.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant alleges back and leg pain including his left knee and ankle (Ex. 3E).  Although he experiences pain in these areas, the medical evidence shows that he is able to work and move about in a satisfactory manner.  In addition, there is no indication of major muscle weakness or loss of control in his legs and no indication of major joint deformity, swelling, instability, or restriction in movement present.  The claimant reported for many years (since 1991) (Ex. 6E) that his ability to lift is restricted.  However, he worked for many years since that time without incident.  Orthotics have been offered to the claimant, but he has declined such offers, noting that he had tried them in the past and it caused his leg to twist.  He reported his belief that an orthotic will make his back and leg worse and cause him more pain.  The claimant takes Naproxen for pain (Ex. 8E).  He is able to care for his personal needs as dressing and bathing, but feels limited by spasms and fatigue (Ex. 14E).

///

The undersigned notes that other aspects of the claimant's testimony appear exaggerated. The claimant testified that he spends much of the day lying down due to pain and even eats lying down and cannot lift more than four-five pounds. When queried, the claimant noted physician advice that it would be better that he does not lift as it could affect his back and the nerve damage in his leg. However, practitioners at Northern California Orthopedic Centers (Ex. 1F) reported that the claimant is able to weight bear in an unrestricted fashion. The few treatment notes show complaints of back pain that are likely due to his left leg impairment.

The claimant also testified that he is limited to standing for five minutes, even with a cane, due to pressure and pain. When queried directly by his representative and twice by the undersigned as to how long he was able to sit, the claimant never gave a direct answer. The claimant was intentionally vague or he stated that he spent most of the time lying down. The claimant noted that he has a driver's license and is able to drive even though he also stated that he does not drive because his leg shakes. While it is clear that the claimant needs a cane due to his history of polio and likely has some pain, records do not support his testimony of such significant limitations.

It appears that the claimant received assistance from his representative's secretary in completing his work report (Ex. 5E). In that document, the claimant showed that he previously had worked full-time (eight hours a day, five days a week), sitting for six hours and standing/walking for one or two hours. However, in his testimony, the claimant noted that he only worked part-time and was allowed to lie down at one job. He stated that his first two jobs were for friends who did not really require him to do anything and the café job was his family's café, owned by his wife. He reported that he would only sit and watch out to make sure that no drunks or other problems would arise and that he would call the police if there was a problem. When confronted regarding the discrepancies in his testimony, both the claimant and his representative stated that there had been an error, because in Syria, no one works an eight-hour day as it is much more casual there. He went on to say that in the case of the café, it was opened from 8 AM-12 PM and he worked flexible hours, but for eight hours over the entire period. The undersigned finds this only partially credible. While he may not have worked a straight eight-hour workday, it appears that his job required more tasks than he testified to and it appears that the claimant was attempting to portray himself as more limited.

Plaintiff argues:

> . . .[H]ere the denial itself at step four, as well as RFC, turned on this supposed finding of claimant noncredibility. And not a thing said about plaintiff's credibility in this decision is accurate or supported. It is either inaccurate in view of the medical evidence as discussed above; inaccurate once one considers that there existed an alternative medical opinion about RFC that the decision ignored. . .; or purely conjectural on the part of the decision, which conjectures look less likely in view of the

> Dr. Polskivy RFC and proper consideration of the ignored Social Security Ruling 03-1p, such as that Mr. Al Abdo Al Haluf perhaps *does* spend "most of the time lying down and that he even eats lying down," "was told not to lift more than six pounds," and that "he does not drive because his legs shake." (Transc., pp. 22-23).  Here credibility was not just "gotten backwards"; the whole subject is in invidious, vicious circle.
> This discussion could be extended, including by reference to relevant case law and Social Security Ruling 96-7p, but at this point . . . what's needed is just an expression from this court that the existing credibility findings is *not* alright.  (emphasis in original).

While no doubt plaintiff would like a favorable ruling from this court, such a ruling is not possible on plaintiff's wish alone.  Plaintiff states that the "discussion could be extended," but does not extend the discussion.  Specifically, plaintiff does not put forward any reasons why the ALJ erred in her credibility analysis.  Plaintiff states that the decision is inaccurate, but does not say how.  While plaintiff references a treating physician residual functional capacity finding which the ALJ supposedly ignored, plaintiff does not point to any portion of the record containing such an assessment.  As discussed above, a review of the record reflects that none exists.

Having reviewed the ALJ's credibility analysis, the court finds no error.  Specifically, the ALJ properly noted inconsistencies in plaintiff's statements.  For example, in his application plaintiff stated that he could no longer work as of April 2010, but he testified that he has not been able to work since 2004.  Additionally, in a work report plaintiff stated that he previously worked full-time, but later testified that he only worked part-time.  When pressed on these inconsistencies, the ALJ observed that both plaintiff and his representative appeared evasive.  Given these factors alone, the ALJ was entitled to discount plaintiff's credibility.

### C. Listing 11.11

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity.  <u>Young v. Sullivan</u>, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

Regarding the Listings of Impairments, the ALJ stated:

> The medical evidence indicates that the claimant has degenerative joint disease and back pain that are "severe" within the meaning of the Regulations. Although the claimant experiences musculoskeletal impairments, they have not resulted in neurological changes, motor loss, or the degree of functional loss as required by the Listings.

Plaintiff argues:

> Obviously, the decision gave only a cursory step-three evaluation with regard to the *musculoskeletal* listings, rather clearly in terms of listing 1.04, though the decision specifies little, not even that, in its two sentences. (Transc., pp. 20-21).
> As discussed above, (*supra*, p.2:20-27), the appropriate listing, or a more appropriate listing, is 11.11, which Social Security Ruling 03-1p (also never mentioned or used in any analysis here) directs should be considered in cases of post-polio syndrome. (emphasis in original).

As defendant notes, plaintiff does not put forward any theory as to how Listing 11.11 applies in this case. Under Listing 11.11, one of the following must exist: (1) the claimant must have persistent difficulty swallowing or breathing; or (2) the claimant must have unintelligible speech; or (3) the claimant must have disorganization of motor function characterized by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dextrous movement, or gait and station. See 20 C.F.R. pt. 404, subpt. P, App. 1, Listing 11.11. Because plaintiff has not identified medical evidence which would point to one of these three conditions, the court finds that the ALJ did not err in excluding a specific discussion of Listing 11.11.

///

///

///

///

D. **Plaintiff's Past Relevant Work**

Regarding past relevant work, the ALJ stated:

> Jim Van Eck, an impartial vocational expert, testified as to the vocational aspects of this case. Upon review of the claimant's work history in the file and after hearing the claimant's testimony concerning his past relevant work, Mr. Van Eck testified that the claimant has past relevant work experience as a warehouse laborer. . . which is unskilled with a specific vocational preparation time (SVP) of 2 and medium exertional demands and as an officer clerk . . . which is semi-skilled (SVP 3) and light, but sedentary as performed. In light of a residual functional capacity for sedentary work that involves occasionally stooping and that restricts climbing, balancing, and exposure to heights and allows for the use of a cane for ambulating all distances and terrains and the evidence in the record, Mr. Van Eck testified that the claimant would be able to perform his past relevant work as an officer clerk as he performed it which was full-time and almost at a full exertional range of sedentary with lifting of less than 10 pounds.

According to plaintiff, the ALJ's conclusion regarding past relevant work is flawed because, contrary to the hypothetical posed to the vocational expert, he testified that his past work was not full-time and, therefore, not "substantial" or "gainful." The court rejects this argument because, as discussed above, the ALJ properly discounted plaintiff's testimony as not credible, including his testimony that his past relevant work was part-time and not full-time as stated elsewhere in the record.

E. **Other Jobs Plaintiff Can Perform**

As an alternative finding, the ALJ determined that plaintiff could perform other jobs which existed in significant numbers in the national economy. This finding was also based on testimony from vocational expert Mr. Van Eck. Plaintiff argues that the ALJ's alternative vocational finding is defective because there is no discussion in the decision as to how many alternative jobs exist in the national economy. While plaintiff is correct that specific numbers of representative jobs existing in the national economy were not recited in the hearing decision, a review of the hearing transcript reflects that such evidence was adduced. For example, Mr. Van Eck testified that, as to nut sorter positions, 1,500 such jobs existed in California and 10,000 existed nationally. Similarly, as to the position of fishing reel assembler, Mr. Van Eck testified

that 1,600 such jobs existed in California and 9,000 existed nationally. This evidence supports the ALJ's conclusion, as outlined in the hearing decision, that such jobs "exist in significant numbers in the national economy."

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

   1.   Plaintiff's motion for summary judgment (Doc. 20) is denied;

   2.   Defendant's cross-motion for summary judgment (Doc. 22) is granted; and

   3.   The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 28, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE